IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE LIFE CENTER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 1759 |
| ) | |
| CITY OF ELGIN, ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant City of Elgin's (City) motion to dismiss, and Plaintiff The Life Center, Inc.'s (Life Center) motion for summary judgment on Count I. For the reasons stated below, the City's motion to dismiss is denied and Life Center's motion for summary judgment is granted.

## BACKGROUND

Life Center contends that it operates TLC Pregnancy Services (TLC), a religious-based organization that provides pregnant women with spiritual support, free reproductive healthcare information, and limited ultrasound services. In September 2010, TLC allegedly began providing services from a mobile facility in a recreational vehicle (Mobile Facility) that TLC parked in a couple of commercial lots

located in the City with the permission of the owners of such parking lots. Life Center contends that "TLC's volunteers aboard the [M]obile [F]acility provide a message of hope by sharing the truth of God's love for them and the life they can find in and through Jesus Christ." (Compl. Par. 13). Life Center contends that the Mobile Facility provides religious literature to pregnant women and certain prenatal services, such as ultrasound services. According to Life Center, TLC's patients consist mainly of young women without financial and emotional support. Life Center contends that unlike the services at a permanent facility, the Mobile Facility's services are particularly visible and accessible to women, and that the Mobile Facility provides a level of anonymity to women who may be unable or unwilling to go to a permanent facility. Life Center explains that the ultrasound services provide pregnant women with information that could identify health issues and potentially save the lives of their unborn children.

According to Life Center, the City consistently approved temporary use permits for TLC to operate in parking lots in the City until August 7, 2012, when a City employee allegedly approached the Mobile Facility and told TLC to cease operations. The City allegedly informed TLC that, based on a recent amendment to the Elgin Municipal Code (Code) relating to temporary uses (Temporary Use Provision), TLC could obtain permits for the Mobile Facility under the Temporary Use Provision only for a limited number of days each year. There are also some allegations in the complaint that the enforcement against Life Center was triggered at the "behest" of a City councilperson. (Compl. Par. 25-26). The City also allegedly

informed TLC that it had already used its permitted time for 2012.

Life Center includes in the complaint a facial challenge to the Temporary Use Provision contending that it is unconstitutionally vague and overbroad (Count I); an as-applied challenge to the Temporary Use Provision contending that it violates a woman's right to acquire useful knowledge and care for her unborn child (Count II); an as-applied challenge to the Temporary Use Provision contending that it violates an unborn child's fundamental right to begin life with a sound mind and body (Count III); an as-applied challenge to the Temporary Use Provision contending that it interferes with Life Center's rights under the Free Access to Clinic Entrances Act, 18 U.S.C. § 248 (Count IV); a facial and as-applied challenge to the Temporary Use Provision contending that it violates Life Center's federal constitutional rights to free speech (Count V); an as-applied challenge to the Temporary Use Provision contending that it violates Life Center's state constitutional rights to free speech (Count VI); an as-applied challenge to the Temporary Use Provision contending that it violates Life Center's federal constitutional rights to the free exercise of religion (Count VII); an as-applied challenge to the Temporary Use Provision contending that it violates Life Center's state constitutional rights to the free exercise of religion (Count VIII); an as-allied challenge to the Temporary Use Provision contending that it violates the unreasonable limitation provision of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* (Count IX); an as-applied challenge to the Temporary Use Provision contending that it violates the substantial burden provision of RLUIPA (Count X); an as-applied challenge to the

Temporary Use Provision contending that it violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.* (Count XI); and an as-applied challenge to the Temporary Use Provision contending that it violates the Equal Protection Clause of the Fourteenth Amendment (Count XII).  On March 13, 2013, the court entered a temporary restraining order (TRO) against the City and since the expiration of the TRO, the parties have agreed to maintain the status quo.  Life Center now moves for partial summary judgment on Count I.  The City moves to dismiss all claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff").  When subject matter jurisdiction is not apparent on the face of the complaint and is contested, "'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999)(internal quotations omitted)(quoting *United Transportation Union v. Gateway Western Railway Co.,* 78 F.3d 1208, 1210 (7th Cir. 1996)).  The burden of proof in regards to a Rule 12(b)(1) motion is on the party asserting that the court has subject

4

matter jurisdiction. *Id.*

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Individual Standing

The City argues that Life Center lacks individual standing to bring the claims in Counts IV through XII. In order to have a "case or controversy" under Article III of the Constitution, a plaintiff must have: (1) "an injury in fact," (2) "an injury that is

5

fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and (3) "an injury that is likely . . . [to] be redressed by a favorable decision." *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2013 WL 2149971 (7th Cir. 2013))(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))(internal quotations omitted); *see also Freedom From Religion Foundation, Inc. v. Obama*, 641 F.3d 803, 805 (7th Cir. 2011)(stating that "[s]tanding has three components: injury, causation, and redressability").

The City argues that TLC indicates that it will only suffer an indirect harm from the Temporary Use Provision, and that TLC fails to allege any specific, concrete, and direct harm to TLC from the Temporary Use Provision. The City contends that Life Center is seeking redress for an indirect harm similar to that in *Warth v. Seldin*, 422 U.S. 490 (1975). In *Warth*, the plaintiffs brought a declaratory judgment action to challenge a zoning ordinance that the plaintiffs contended excluded persons of low and moderate income from the town at issue (Town). *Id.* at 493. The Court held that the plaintiffs lacked standing because none of the plaintiffs alleged that they ever resided in the Town or alleged facts that indicated that they were excluded from the Town due to the zoning ordinance in the Town. *Id.* at 503-04. The Court also pointed out that the record indicated that the lack of low income housing in the Town was due to "economics in the housing market," rather than the zoning ordinance in the Town. *Id.* The Court concluded that the plaintiffs "rel[ied]

6

on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents acted otherwise, and might improve were the court to afford relief." *Id.* at 507.

Unlike in *Warth*, Life Center does not allege a vague remote possibility of harm from the Temporary Use Provision. Life Center alleges that TLC is directly affected by the Temporary Use Provision. Life Center has alleged that the Temporary Use Provision includes significant restrictions on the Mobile Facility's operations, limiting when and where TLC can operate the Mobile Facility. Life Center also alleges that TLC is obligated to pay $190 for each use permit, and that the Temporary Use Provision makes it effectively impossible for TLC to have the visibility and continuity of its services that are necessary to effectively treat the young pregnant women whose only hope for ultrasound is the Mobile Facility. Life Center has alleged a concrete harm resulting from the Temporary Use Provision and a harm that likely can be redressed by a ruling in its favor in this case. Therefore, in regard to the claims in Counts IV-XII, Life Center has shown that it has standing in the instant action.

## II. Joinder

The City argues that the instant action should be dismissed because Life Center has not joined as plaintiffs the owners of the properties (Property Owners) where Life Center seeks to operate the Mobile Facility. Rule 19(a) provides the following:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (I) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). The City argues that only the Property Owners' interest in the properties is subject to regulation by the Code and that absent joinder of the Property Owners, the ability of the Property Owners to protect their interest in the properties could be impaired. The City also argues that the failure to join the Property Owners could expose the City to multiple lawsuits arising from the same dispute.

Life Center correctly points out that they are entitled to have their day in court regarding the alleged violations of their independent constitutional rights, regardless of whether the Property Owners choose to join the action to vindicate their constitutional rights as well. In regard to the impact that this case may have on the Property Owners' rights to host temporary uses, regardless of the ultimate determination in this case, the Property Owners will remain free to permit or exclude temporary uses on their properties. The relief sought in this case will not limit the Property Owners' ability to consent to temporary uses on their property in the City. Life Center acknowledges in the complaint that they are only able to operate the Mobile Facility on the properties with the permission of the Property Owners.

(Compl. Par. 15, 21). The true interest at issue in this case is the operation of the Temporary Use Provision, which does not affect the ability of the Property Owners to host or exclude such uses on their properties. As to engaging in temporary uses in the City, that opportunity is available to all members of the public and is not in any way unique to the Property Owners. Thus, the City has not shown that the Property Owners are necessary parties that must be joined in the instant action.

III. Overbreadth and Vagueness Challenge (Count I)

Life Center contends that the Temporary Use Provision is unconstitutionally overbroad and vague. The Temporary Use Provision amended Section 19.90.015 of the Code on June 27, 2012, and reads in pertinent part as follows:

> USE, TEMPORARY: A 'land use' which is established for a fixed period of time with the intent to discontinue such use on the expiration of the time period. . . .
>
> Number And Duration: No more than four (4) temporary uses shall be conducted on the same 'zoning lot' within a calendar year. No single temporary use shall be established or operate for more than thirty (30) days, and the total number of days for all temporary uses established or operating on the same 'zoning lot' within a calendar year shall not exceed sixty (60) days. . . . Except as provided for an 'intermittent temporary use', the days a temporary use operates or is otherwise open or available to the general public shall be consecutive, and each such time period shall constitute one of the four (4) allowable temporary uses within a calendar year. . . .

(R SF Par. 32). The Code defines the term "land use" as "[t]he purpose or type of activity for which land, or the structure or building thereon, is designed and intended,

9

or for which it is occupied or maintained." (R SF Par. 40). The Code also defines the term "structure" as "[a]nything manufactured, constructed, or composed of parts joined in some definite manner that requires a location on the ground or that is attached to something that has a location on the ground," and "[s]tructures shall include, but shall not be limited to buildings, antennas, signs, fences, and off street parking facilities." (R SF Par. 41).

Under Supreme Court precedent, "[f]acial invalidation for technical overbreadth is strong medicine, . . . and is inappropriately employed unless the statute substantially criminalizes or suppresses otherwise protected speech vis-à-vis its plainly legitimate sweep." *Bell v. Keating*, 697 F.3d 445, 455-56 (7th Cir. 2012)(stating that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds")(internal quotations omitted)(quoting *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800-01 (1984)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 114-15 (1972)(indicating that a court must consider whether "the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments"). In the context of First Amendment protected speech, the Supreme Court has "recognize[d] a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United*

*States v. Stevens*, 130 S.Ct. 1577, 1587 (2010)(quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n.6 (2008))(internal quotations omitted); *New York v. Ferber*, 458 U.S. 747, 767-69 (1982)(recognizing that an exception to rare application of the overbreadth doctrine may be present in the First Amendment context).

In the instant action, Life Center has pointed to several ways in which the Temporary Use Provision could prevent people from exercising protected First Amendment rights. The definitions under the Code for the terms "land use" and "structure" are so broad, they would encompass virtually all types of activity, including a substantial amount of activity protected under the First Amendment. For example, a property owner in the City might hang a flag from a flagpole attached to a building and the flag might contain graphics or lettering to indicate the property owner's support for a country, political position, or philosophical position, which could be speech protected under the First Amendment. *See, e.g, Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 305 (1984)(explaining that in *Spence v. Washington*, 418 U.S. 405 (1974), the Court "held that displaying a United States flag with a peace symbol attached to it was conduct protected by the First Amendment").

Under the broad definitions of "structure" and "land use" in the Code and the Temporary Use Provision, the flag joined to the pole that is attached to a building might technically fall under the definition of a structure that is governed by the

Temporary Use Provision. The property owner would thus be required to pay a $190 fee to hang the flag and would be limited as to the number of days per year that the owner can hang the flag. The City has provided no justification for restricting such activity in such a broad and sweeping manner. Life Center has shown that protected speech could be substantially limited and chilled due to the time limitations included in the Temporary Use Provision. The Seventh Circuit has explained that "[t]he overbreadth doctrine prevents the government from casting a net so wide that its regulation impermissibly burdens speech." *Schultz v. City of Cumberland*, 228 F.3d 831, 848 (7th Cir. 2000). The Temporary Use Provision does exactly that by needlessly hindering protected speech. The attorney representing the City argued in open court during the temporary restraining order hearing that TLC is not limited in operating the Mobile Facility since it could obtain four permits a year at dozens of different locations around the City by paying the required fee for each permit. Such an argument is without merit and such a policy regarding the operation of mobile facilities would be unduly burdensome on Life Center or similar applicants.

In addition to being overly broad and unduly burdensome, the Temporary Use Provision is also unconstitutionally vague because it fails to clearly indicate to the public how it may comply with the provision. *See Gresham v. Peterson*, 225 F.3d 899, 907 (7th Cir. 2000)(stating that "[t]he void-for-vagueness doctrine forbids the enforcement of a law that contains 'terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its

application.'")(quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 629 (1984)). As indicated above, the application of the Temporary Use Provision could be construed to apply to innocuous activities such as putting up a flag. A member of the public is thus left to speculate whether he or she is going to face prosecution by the City if he or she does not first obtain a $190 permit for the flag. This in turn makes it possible for the City to arbitrarily and selectively target members of the public by acting within the vague parameters of the Temporary Use Provision. *See id.* (stating that "[l]egislative enactments must articulate terms with a reasonable degree of clarity to reduce the risk of arbitrary enforcement and allow individuals to conform their behavior to the requirements of the law")(internal quotations omitted).

It is also important to note in this case that the City is seeking to limit much more than, for example, temporary commercial sidewalk or tent sales. Although the City claims that it is merely applying the Temporary Use Provision with a blind eye toward the activities that it impacts, it must be recognized that the City is preventing Life Center from being able to effectively provide pregnant women in the City with needed medical care that could identify medical issues and save the lives of unborn children. Life Center has in fact provided evidence that it has helped a multitude of young women who have used the services at the Mobile Facility.

The facts relating to the motion for summary judgment are not in dispute. Life Center has been operating the Mobile Facility since 2010 on certain strategically placed private commercial parking lots that were easily accessible to young women.

The Mobile Facility operates periodically such as on certain Tuesdays for a few hours. Life Center has and is providing free and valuable services to young women by offering them pregnancy tests, prenatal vitamins, certain ultrasound services, medical referrals, and counseling, potentially saving the lives of mothers and their unborn children. In the summer of 2012, the City amended the Code, making it unduly burdensome for Life Center to provide the above-mentioned valuable, free services to young women. Immediately after the amendment of the Code, a City Councilwoman drove by the Mobile Facility and complained to the police, calling the mobile facility "an eyesore." The evidence provided by Life Center reflects that the Mobile Facility is modest in appearance, was parked in a large parking lot, and was nothing of the nature described by the Councilwoman. Based on the above facts and the uncontested evidence provided by Life Center, the motives in amending the Code in 2012 are highly suspect and the City appears to have been targeting Life Center. The City's Code is unduly burdensome to the right of a woman to choose life. The City's effort to curtail private entities from providing free and valuable services to its young women is ill-advised. It is puzzling why the City would be so unreasonable in implementing ordinances and policies that curtail not only the constitutional rights of its citizens, but also the availability of needed medical care and emotional support for its vulnerable young women. Based on the above, the court grants Life Center's motion for summary judgment on Count I and finds that the Temporary Use Provision is unconstitutional as being overbroad, vague, and unduly burdensome. In addition, the court notes that Life Center's alternative

argument is that the Temporary Use Provision acts as an impermissible prior restraint on and prohibition of TLC's freedom of speech and expressive association on private property. Since the court has found the Temporary Use Provision unconstitutional on other grounds, the court need not address Life Center's alternative argument.

IV. Remaining Claims

Life Center has presented various other facially legitimate claims, such as those relating to a woman's right to knowledge and care regarding her pregnancy and the rights of an unborn child, but has not filed a motion for summary judgment relating to the additional claims. Therefore, the case will proceed on the remaining claims in Counts II-XII.

In regard to the City's motion to dismiss the remaining claims for failure to state a valid claim, as indicated earlier, all the allegations in the complaint must be accepted as true and all reasonable inferences must be made in favor of Life Center. There are factual issues that are premature to resolve at this juncture without discovery. Therefore, the City's motion to dismiss is denied in its entirety.

## CONCLUSION

Based on the foregoing analysis, the City's motion to dismiss is denied and Life Center's motion for summary judgment as to Count I is granted. The City is permanently enjoined from enforcing the Temporary Use Provision.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 8, 2013